ROBERTS and BATTLE v. HENRY.

1. The statute making sheriffs liable for failing to return executions three days before Court, admits of a reasonable excuse for a failure so to return.
2. Chancery has jurisdiction to relieve a sheriff, where a judgment has been obtained against him for failing to return an execution three days before Court; a sufficient excuse being shewn for such failure, and also for the failure to make defence at law.

EZEKIEL HENRY, sheriff of Shelby county, filed his bill in equity, in Dallas Circuit Court, in December, 1824, against Roberts and Battle, copartners. He charged, that on a judgment obtained by Roberts and Battle in that Court, a *ca. sa.* issued, requiring him to take in his custody the de-

fendant in said judgment, *William Mulkey*, to satisfy to said plaintiffs $839 40, debt and damages, besides costs; that this execution came to his hands, as sheriff of Shelby county, on the 22d September, 1824; that from that time till the return of said execution, Mulkey was not to be found in Shelby county, that he used due diligence to execute it. That four days previous to the commencement of the Court of Dallas county to which the writ was returnable, he placed the execution in the hands of one *Lawler*, a respectable man, who was going immediately to Cahawba, and said he would return it; that the distance was about seventy miles. He further charged, that he was not apprized that the law required that such process should be returned three days before the commencement of the term; that it was not the uniform practice; and that he did believe he would discharge his duty by returning it on the first day of the term; that his only inducement for not returning it sooner, was, that the mail from Shelby to Cahawba, owing to the circuity of the route, would have taken a length of time, and he was desirous to retain it as long as he could, with a view to serve it on Mulkey, if possible, as he lived in the adjoining county of Bibb. That the writ was returned on the first day of the term; that Mulkey was notoriously insolvent which he alleged the defendants knew. The complainant further charged, that on the eleventh day of the return term of Dallas Circuit Court, Roberts and Battle, on motion to said Court, obtained judgment againt him as sheriff, for $855 02½ for a supposed negligence in failing to return the execution three days before the commencement of the term; that the only notice he received of said motion, was given him on the the 19th of October, 1824, which was the second day of the term of Dallas Court, and after the return of the execution; that he was at the tsme attending on Shelby Court, which was then in session, as sheriff of that county, at a distance of 85 or 90 miles from Cahawba. The prayer of the bill was, that said judgment be perpetually enjoined, and for general relief.

*Willis Roberts* answered, that James Battle, his former copartner, knew nothing of the matter; that he the respondent, had the sole management of it; that he believed the complainant had not used due diligence to execute the *ca. sa.* that he was informed that Mulkey was often in Shelby county, while the complainant had the execution in his possession, and within the knowledge of the complainant. That he did not know where the place of the permanent

residence of Mulkey was at that time. That he was informed and believed the execution was not returned till the second day of the term of Dallas Court, and after the notice had been sent; that the complainant had notice of the intended motion on the second day of the term of Dallas Court, and that the motion was made only on the eleventh day of the term; that the person who gave the notice at Shelby Court remained there till the adjournment of the Court, and afterwards travelled to Cahaba before the motion was made; and that therefore the complainant might, if he would, have made defence to the motion at law. The respondent further stated, that he believed said Mulkey had property in his own right, or had fraudulently conveyed it away; that he did not know, at the time of the issuance of the execution against Mulkey, that he was a resident of Bibb county, but was informed that a writ issued against him in Bibb about the time, was returned not found by the sheriff of Bibb county, who alleged as a reason, that Mulkey resided in Shelby county. He further answered, that he was ignorant of the negligent practice of sheriffs throughout the State, as alleged by complainant; but that the practice in Dallas he believed, was to return executions three days previous to the return term; and to the other allegations of the bill, as to the acts or inducements of the complainant, he answered that he was unadvised. The answer prayed, that the defendant might have the benefit thereof as a demurrer to the bill for want of equity, &c.

*Lawler*, a witness for the complainant, deposed, that seven days previous to the October term of Dallas Court, in 1824, he received the execution of Henry; that he told him he was going to Cahawba, and promised to return it to the Clerk; and that he did so on the first day of the term; that the distance was about seventy miles. Being asked on cross examination if he promised the complainant to deliver the *ca. sa.* to the Clerk of Dallas, three days before Court, or if he was requested to do so, he said, that he thought he did not make such promise, and did not recollect if he was so requested, or not.

*Moore*, another witness for complainant, proved, that he lived in Bibb county, three quarters of a mile from the Shelby line; that from June to October 1824, Mulkey resided part of the time at his house, and was during that time, backwards and forwards between his house and Mulberry Creek; that he was intimately acquainted with him; and that he knew him to be insolvent; that one hundred dol-

lars could not have been collected of him. On cross examination, being asked if Mulkey was not in Shelby county at any time in September or October, 1824, he said, that he saw him at a Camp Meeting on Thursday evening, about the second of September, and from then till the Monday following.

*M'David*, a third witness for the complainant, deposed, that he lived with the complainant; that Mulkey was at Henry's house, but it was in the spring of 1824. That Henry was as industrious in executing process as it was necessary for sheriffs to be; that he saw Mulkey at the Camp Meeting, between the first and fifth of September, 1824, but saw him only on one day. On cross examination, he said, that Henry was absent a few days, a time or two, to go to Huntsville and to Cahawba, but did not recollect that he was absent in September or October, 1824; that he had a deputy to attend to business in his absence. He also said he did not know if exertions had been made to find Mulkey, or not.

At October term, 1825, the cause came on to be heard, on the bill, answer and depositions, before Judge Crenshaw; who decreed against the defendants, that the proceedings on their judgment should be perpetually enjoined, and that each party should pay his own costs.

Roberts and Battle assign for error, the decree; and allege that it should have been for them, and that the bill should have been dismissed as on demurrer, for want of equity.

H. G. PERRY, for the appellants. It is urged that the complainant had not legal notice of the motion; and that being in attendance at Shelby Court as sheriff, he could not attend to make his defence at law. The notice was served on Tuesday, the second day of the term of Dallas and Shelby Courts, both sitting at the same time, and the motion was not made till Friday, the eleventh day of Dallas Court; giving to the sheriff *ten* days notice of the motion, when the law required only *three* days notice to be given. Suppose the sheriff to have been engaged the whole week at Shelby Court, still he had six days after that time to travel to, and attend at Cahawba, a distance of only eighty miles. He does not shew that he made any attempt to go there, that he applied for time to do so, nor that he employed counsel, or did any act evincing a wish or disposition to defend said suit at law. The complainant also urges that he was ignorant of the law and practice in cases of this kind.

JULY 1820.

Roberts and
Battle
v.
Henry.

If ignorance of the law does not excuse private person. much less can it a public officer, who in accepting the office, impliedly undertakes that he has the necessary skill, and that he will perform all its duties correctly. Neither is it an excuse for the sheriff that Mulkey was insolvent, for it was the very object of a *ca. sa.* to compel him to discover and yield up such property as was concealed and had been by him fraudulently conveyed away, and was out of view. ·It is urged that the law is one of great rigor; but to this it may be answered, that the Legislature have *ever* since thought differently; and have in fact, since that time, made one days notice sufficient instead of three; and in fact no law can be considered too rigorous that compels an officer to perform ordinary duty; and this does nothing more. The grounds of accident and necessity cannot, in this case, afford to the sheriff a more safe reliance, as an excuse for not making his defence at law; for the record furnishes no facts from which any conclusions can be drawn, warranting relief on those grounds; and we need not look out of it for such reasons.

Another view of the case is, that by the decree rendered below, a positive statute of the State has been set at nought; and the rights of the appellants under it have been wholly disregarded. If the law is rigorous, it is not the business of a Court to abate its rigor. The law commanded, and wisely too, that the sheriff should return the execution three days before Court, absolutely;[a] he shews that he did not even try to do so; then by what rule of right can negligence of this kind be excused, and how can the penalty given by the statute, absolutely, for such default, be withheld? It is certainly important to be settled whether in any case, and what class of cases, a chancellor can control, disregard or repeal a positive statute;[b] Courts of law and Courts of equity, do not differ in the exposition of statutes. [c] In all the high handed measures of the English Chancery Courts, it is believed no analogous case can be found; and surely it will not be considered good policy here, to exceed the English Courts in their control over common law or statutory proceedings

*a* Laws of Ala. 319, 316.

*b* Fonblanques Equity p. 5. note e.
*c* Fonblanques Equity p. 23, 24. n. g. & h. p. 26 n. j. and k. p. 38. n. t.

MARDIS, for the defendant in error.

By CHIEF JUSTICE LIPSCOMB. The complainant has shewn, by the answer and testimony, that he used a reasonable degree of diligence to have the *ca. sa.* returned

three days before the session of the Court    He has shewn that it was not in his power to attend Court, and resist the rule against him.  He has, therefore, fair claims to the interposition of a Court of chancery.    The statute requiring a sheriff to return executions three days before the next ensuing term, will admit of a reasonable excuse for failing to do so.    Such a case we believe has been made out.

JULY 1829.

Roberts and Battle
v.
Henry.

Decree affirmed:

Judge CRENSHAW not sitting.